IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-02531-PAB-MDB

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

     Plaintiff,

v.

MIDWEST FARMS, LLC,

     Defendant.

---

**SCHEDULING ORDER**

---

**1.  DATE OF CONFERENCE
AND APPEARANCES OF COUNSEL AND PRO SE
PARTIES**

The parties filed a Proposed Scheduling Order with disputed issues on

November 22, 2023.

Should the Court set a scheduling conference in this case, the following

attorneys will be in attendance:

     <u>Plaintiff EEOC:</u>
     Lauren Duke
     Carey K. DeGenaro
     EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
     Denver Field Office
     950 17th Street, Suite 300
     Denver, CO 80202
     (720) 779-3621

(720) 779-3649
lauren.duke@eeoc.gov
carey.degenaro@eeoc.gov

*Attorneys for Plaintiff EEOC*

Defendant Midwest Farms, LLC:

Kendra K. Smith
Katherine N. Hoffman
John F. Peters
Hall & Evans, L.L.C.
1001 Seventeenth Street, Suite 300
Denver, CO 80202
(303) 628-3300
smithk@hallevans.com
hoffmank@hallevans.com
petersj@hallevans.com

*Attorneys for Defendant Midwest Farms, LLC*

## 2.  STATEMENT OF JURISDICTION

This action is brought by the Equal Employment Opportunity Commission (EEOC) and authorized by Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f)(1) and (3), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a. The Court has jurisdiction under 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.

Defendant Midwest Farms, LLC (Defendant) does not dispute the Court has jurisdiction over it in this action and acknowledges that venue is proper.

## 3.  STATEMENT OF CLAIMS AND DEFENSES

a.  Plaintiff:

The EEOC brings three claims against Defendant under Title VII: (1) for hostile

work environment and sexual harassment under 42 U.S.C. § 2000e-2(a)(1); (2) for

constructive discharge under 42 U.S.C. § 2000e-2(a)(1); and (3) for retaliation under 42

U.S.C. § 2000e-3(a).

As plead in greater detail in the Complaint, the EEOC alleges Defendant

subjected Charging Party Andria Denny and other female employees to sexual

harassment that was severe or pervasive. Denny and other aggrieved female

employees were sexually harassed by male managers or supervisors including, but not

limited to unwelcome sexual requests, unwelcome verbal sexual harassment, and a

male manager entering the women's dressing room unannounced. On at least three

separate occasions, a male manager entered the women's dressing room without

knocking while Denny was in the room either undressed or undressing. Other male

managers regularly subjected female employees to vulgar sexual language, sexual

propositions and advancements, and unwelcome physical touching. The EEOC alleges

that Denny and other aggrieved female employees were forced to resign their

employment because of the intolerable work conditions they faced. In addition, the

EEOC alleges Defendant retaliated against employees because they opposed or

complained about the sexual harassment, and despite complaints from female

employees about sexual harassment and retaliation, Defendant failed to take adequate

corrective and remedial steps to correct or prevent the harassment and retaliation.

b. Defendant Midwest Farms, LLC:

Defendant Midwest Farms, LLC ("Midwest Farms") denies Plaintiff states any cognizable claims against it. Midwest Farms denies it subjected Andria Denny or any other employee or former employee to unlawful conduct, including hostile work environment, sexual harassment, constructive discharge, or retaliation.

i.     *Organizational Profile of Midwest Farms*

Founded in 1994, Midwest Farms is a family-owned agribusiness, operating a hog farm located in Burlington, Colorado. Midwest Farms is an industry leader in quality, consistency, and safe and humane animal husbandry practices. As part of its commitment to safety and quality standards, Midwest Farms operates under a biosecurity system and infrastructure plan aimed at achieving high health status for its pigs. Further, Midwest Farms' hog farm is built on a sustainable agriculture model.

At all relevant times, Midwest Farms has employed fewer than 100 employees, typically employing anywhere between 80 to 95 employees. In addition to its agricultural mission, Midwest Farms maintains strong dedication to the individuals it employs.

ii.    *Core Values and Anti-Harassment Policies of Midwest Farms*

Midwest Farms understands its success depends on the hardworking employees who support the company's day-to-day operations. As a result, Midwest Farms adheres to a number of defined, core values, including the following in pertinent part:

> Operate an economically successful business so that a consistent level of employment is available.

Select people on the basis of skill, training, ability, attitude, and character without discrimination with regard to age, sex, color, race, creed (religion), national origin, ancestry, marital status, pregnancy, sexual orientation, arrest or conviction records, membership in state or U.S. Military Reserves, or any other characteristic protected by law that does not prohibit performance of essential job functions.

. . .

Develop competent people who understand and meet our objectives, and who accept with open minds the ideas, suggestions and constructive criticisms of fellow employees.

Assure employees have open communication with their supervisors, and have an opportunity to discuss any problem with managers of Midwest Farms.

Make prompt and fair adjustment of any complaints that may arise in the everyday conduct of our business, to the extent that is practicable.

Respect individual rights, and treat all employees with courtesy and consideration.

Maintain mutual respect in our working relationship.

Provide buildings, facilities, and grounds that are clean, orderly and safe.

Midwest Farms maintains an Equal Employment Opportunity policy as follows:

Midwest Farms provides equal employment opportunity for everyone regardless of age, sex, color, race, creed, national origin, religious affiliation, marital status, political belief, or disability that does not prohibit performance of essential job functions. In addition, laws regarding veterans' status are observed. This is reflected in all Midwest Farms practices and policies regarding hiring, training, promotions, transfers, rates of pay, layoff, and other forms of compensation. All matters relating to employment are based upon ability to perform the job, as well as dependability and reliability once hired.

Further, MWF maintains an effective Anti-Harassment policy, which contain clear

5

reporting procedures, in pertinent part:

**Harassment**

Midwest Farms intends to provide a work environment that is pleasant, healthful, comfortable, and free from intimidation, hostility, or other offenses that might interfere with work performance. Harassment of any sort – verbal, physical, visual – will not be tolerated.

**What is Harassment?**

Harassment can take many forms. It may be, but is not limited to: words, signs, jokes, pranks, intimidation, physical contact, or violence. Harassment is not necessarily sexual in nature.

Sexual harassment may include unwelcome sexual advances, requests for sexual favors, other verbal or physical contact of a sexual nature when such conduct creates an intimidating environment, prevents an individual from effectively performing the duties of their position, or when such conduct is made a condition of employment or compensation, either implicitly or explicitly.

**Responsibility**

As a Midwest Farms employee, you are responsible for keeping our work environment free of harassment. Any employee who becomes aware of an incident of harassment, whether by witnessing the incident or being told of it, must report it to the Operations Manager or any supervisor of Midwest Farms with whom you feel comfortable, or the Manager of Human Resources at Midwest Capital Services, L.L.C., Onalaska, WI (1-608-783-8883). When Midwest Farms becomes aware that harassment might exist, it is obligated by law to take prompt and appropriate action, whether or not the victim wants the company to do so.

**Reporting**

**If you feel that you have experienced harassment, report the incident immediately to the Operations Manager, or any supervisor of Midwest Farms with whom you feel comfortable, or the Manager of Human Resources at Midwest Capital Services, L.L.C., Onalaska, WI (1-608-783-8883). Appropriate investigation and disciplinary action will be taken. All reports will be promptly investigated with due regard for the**

6

**privacy of everyone involved. Any employee found to have harassed a fellow employee or subordinate will be subject to severe disciplinary action or possible discharge. Midwest Farms will also take any additional action necessary to appropriately correct the situation. Midwest Farms will not retaliate against any employee who makes a good faith report of alleged harassment, even if the employee was in error**.

iii. *Andria Denny's Employment with Midwest Farms*

Andria Denny began her employment at Midwest Farms on September 14, 2018. Ms. Denny was employed at Midwest Farms for a total of only eight (8) weeks. During her extremely brief duration of employment, Ms. Denny worked in the position of Floater/ Swine Production Trainee at Farm 5.

In this position, Ms. Denny's direct supervisor was Harley Jay Breigel, Farm Manager. Mr. Briegel reported to Doran Soncksen, Production Manager. Doran Soncksen reports to David Amundson, Manager of Operations. During the time of Ms. Denny's employment, Mr. Breigel had a staff of 16 to 18 people, of whom four (4) to five (5) were female.

A Floater/ Swine Production Trainee is considered an entry-level laborer job. There are typically 8 Floater positions at Farm 5, and the position is filled by both women and men. As a Floater/ Swine Production Trainee, Ms. Denny's primary job responsibilities included the following:

> Transport live hogs of various sizes (2# to over 650#) from building to building. Lift and carry small pigs (2# to 50#) within a building. Feed hogs using hand scoops, 50# bags of feed, or feed cart. Provide veterinary care to hogs, including shots, castration, tail docking, clipping needle teeth, and

assistance at birth. Perform cleaning functions for sanitary conditions in hog buildings. Keep accurate written records requiring counting and weighing. Perform minimal maintenance in buildings utilizing hand tools. Read, comprehend, and adhere to instructions provided in a training manual.

Because Ms. Denny's role entailed working directly with Midwest Farms' pigs, the company required her to agree to comply and to comply with its Biosecurity Management Plan to maintain the company's high health and safety standards. Ms. Denny signed a written acknowledgment to abide by Midwest Farms' specific and detailed Biosecurity Management Plan. Of particular importance, these procedures require anyone who has direct contact with the pigs (employees or visitors), including Ms. Denny, follow the shower decontamination process by which the person removes his or her street clothes, leaves the street clothes in the locker area, shower thoroughly, and dress in Midwest Farms provided clothing before entering the barn area. This process is known as "showering in." During this process, there are several steps involved, and during each of those steps, the privacy of the individual required to "shower in" is respected. **The outside clothing changing rooms, the showers, and the Farm clothing changing rooms are all fully enclosed from floor to ceiling and no one can see into or out of any of those areas without first opening the door** but voices and conversations can be heard between those areas. **All four of the changing/ shower areas have doors with doorknobs and door locks on both the 'outside clothing changing' room and the 'Farm clothing changing' rooms**. The 'Farm clothing changing' rooms are stocked daily with standard sized bathroom towels (24" X 48"), multiple jumpsuits, Tee-shirts and scrub[] tops and bottoms plus a variety of undergarments ('Farm supplied clothing') after

the clothing worn previously is washed and dried after the shift employees leave.

From the very beginning of her employment, Ms. Denny struggled with her attendance. She was late three of the first five days she worked at Midwest Farms. During Ms. Denny's eight weeks of employment with the company, she was late to work 12 days and she had 2 days of unexcused absences. Such conduct directly contravenes MWF's attendance policy and gives rise to a terminable offense. As a result of these attendance issues, Mr. Breigel orally reprimanded her for her repeated tardiness. Indeed, Ms. Denny knew of her attendance issues and Mr. Breigel's dissatisfaction with her attendance because she acknowledged to another employee, Brian Cordona that Mr. Breigel was "hassling her about being late for work."

On November 7, 2018, Ms. Denny left work for the day and never returned to her scheduled shifts. At no time did she tell anyone at Midwest Farms she would not be coming into work. Instead, on November 11, 2018, Ms. Denny came into Midwest Farms' office, asked Donna Hilt, Office Manager, for her final paycheck, received her final paycheck and never returned to Midwest Farms. At no time prior to her voluntary termination, did Ms. Denny ever make a complaint of harassment, discrimination, or hostile working environment.

The first time Midwest Farms received notice of a complaint of harassment was when Ms. Denny filed a Charge of Discrimination at the Colorado Civil Rights Division on or about May 17, 2019, which was subsequently transferred to the U.S. Equal Employment Opportunity Commission ("EEOC"). In that Charge, Ms. Denny alleges Mr.

Briegel walked in on her during the shower decontamination process on three separate occasions. Mr. Briegel denies walking in on Ms. Denny on two of the three cited occasions, and acknowledges inadvertently finding Ms. Denny in the shower decontamination area on one occasion. During that inadvertent interaction, Ms. Denny was late for her scheduled shift, Mr. Breigel did not think anyone was in the biosecurity area when he undertook his routine checks of the area; Ms. Denny did not lock the door; Mr. Breigel knocked before opening the door and heard no response; and Mr. Breigel did not see or have any further interaction once he realized Ms. Denny was there other than to toss her an Midwest Farms-approved jumpsuit without looking at her as she said she was waiting for other clothes to dry. At no time during this inadvertent interaction on the part of Mr. Breigel did Ms. Denny articulate or behave in any manner that would show she was offended by the way in which Mr. Breigel handled this situation.

In sum, there is no basis for liability to attach against Midwest Farms for any allegations asserted by the EEOC arising from Ms. Denny's employment.

iv.    _The EEOC's Failure to Promptly Investigate or Provide Notice to Midwest Farms of Allegations of Unlawful Conduct by Other Purposed Aggrieved Parties_

Ms. Denny filed her Charge of Discrimination ("Charge") against Midwest Farms at the Colorado Civil Rights Division **on or about May 17, 2019**, which was subsequently transferred to the U.S. Equal Employment Opportunity Commission ("EEOC").   The EEOC kept that Charge in investigation for over **four (4) years**.   During the EEOC's investigation, Midwest Farms responded to every request for information provided by the

EEOC.  During that over four (4) year investigation by the EEOC, at no time did the EEOC notify Midwest Farms of the possibility of "other aggrieved individuals" outside of Ms. Denny.

Before the EEOC initiated this enforcement action, the EEOC reached out to Midwest Farms regarding Conciliation. Midwest Farms indicated interest in Conciliation. The EEOC then sent undersigned counsel of Midwest Farms a proposed Conciliation Agreement, which for the first time, notified Midwest Farms that the EEOC was asserting the existence of "other aggrieved individuals." Counsel for Midwest Farms requested additional information regarding the "other aggrieved individuals" and the context of the allegations as to those individuals, and the EEOC refused to provide any information in response. Midwest Farms has not been afforded an opportunity to properly evaluate Conciliation without any information regarding the allegations of the "other aggrieved individuals." Counsel for Midwest Farms submitted a Freedom of Information Act ("FOIA") request to the EEOC for the EEOC's investigative file in the Denny matter in an attempt to obtain further information regarding the "other aggrieved individuals," and the EEOC has denied the FOIA request, claiming exemption.  The EEOC filed the instant lawsuit, providing almost no detail regarding the allegations as to the other aggrieved individuals. During Rule 26(f) conferral, counsel for Midwest Farms inquired as to counsel for the EEOC whether the EEOC would be willing to amend the Complaint to provide fair notice as to the allegations relating to the "other aggrieved individuals," and the EEOC declined.

The EEOC's above actions prevent Midwest Farms from having fair notice of the claims against it and render it impossible impracticable for Midwest Farms to take

positions regarding a proposal for the appropriate scope and timing of discovery in this proposed Scheduling Order.

Midwest Farms continues to evaluate which defenses it may assert.

## 4.  UNDISPUTED FACTS

Plaintiff EEOC: The EEOC proposed 18 undisputed facts. Defendant notified the EEOC on November 22, 2023 they would not agree to any undisputed facts. This is despite several of the EEOC's proposed undisputed facts appearing in Defendant's Statement of Defenses, such as the date Defendant hired Charging Party Andria Denny and her position or that Defendant employed Harvey Jay Briegel as a Farm Manager.

## 5.  COMPUTATION OF DAMAGES

a. Plaintiff:

The EEOC seeks relief for Charging Party Andria Denny and other aggrieved individuals who were discriminated against or retaliated against in violation of Title VII. Such relief includes recovery of backpay, reinstatement or front pay, compensatory damages, punitive damages, and pre- and post-judgment interest.

Without the benefit of discovery, the EEOC provides the following estimates of backpay damages for Denny. The EEOC reserves the right to seek additional backpay damages if warranted. These are preliminary calculations only, and do not include anticipated increases in compensation, which will be included as the case proceeds. Backpay continues to accrue throughout the litigation and up to trial, and therefore may

increase significantly. The EEOC reserves the right to retain an expert witness to present a more complete picture of damages.

In 2018, Denny earned approximately $17.00 per hour at Midwest Farms and worked more than 45 hours each week. Denny's approximate backpay damages, exclusive of pay increases, are estimated to be $111,608.82. The EEOC reserves the right to supplement these calculations as additional information becomes available during discovery.

The EEOC may also seek relief for additional aggrieved individuals subjected to Defendant's unlawful employment practices. Such relief includes economic damages, compensatory damages, punitive damages, and pre- and post-judgment interest on behalf of all aggrieved individuals. Economic damages for these individuals cannot be calculated at this time because all the aggrieved individuals have yet to be identified.

The EEOC seeks compensatory damages, including damages for emotional distress, to include emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses for the Charging Party and the class of other aggrieved individuals. The EEOC will ask the jury to award the Charging Party and the class of other aggrieved individuals a reasonable sum to compensate for such injuries.

The EEOC also seeks punitive damages on behalf of the Charging Party and the class of other aggrieved individuals based on Defendant's intentional and malicious or reckless conduct, in an amount to be determined at trial. The EEOC's recovery for compensatory and punitive damages is subject to statutory caps per individual under 42 U.S.C. § 1981a.

The EEOC may seek a tax-offset for monetary awards.

In addition to monetary damages, the EEOC seeks a permanent injunction prohibiting the Defendant, its agents, and employees, from engaging in further sex discrimination or retaliation. The EEOC expects to seek other non-monetary relief, including but not limited to record-keeping and reporting requirements, posting notices, a policy review, implementing and enforcing revised EEO policies, providing training to managers and employees on such policies and laws, and a written apology to the victims.

The EEOC seeks its costs in this action.

b. Defendant:

Defendant is not presently claiming any damages from Plaintiff. Defendant reserves the right to seek its attorneys' fees and costs pursuant to applicable federal and Colorado law.

## 6.  REPORT OF PRECONFERENCE DISCOVERY AND MEETING UNDER FED. R. CIV. P. 26(f)

a.  Date of Rule 26(f) meeting.

November 1, 2023.

b.  Names of each participant and party he/she represented.

Attorneys Lauren Duke and Carey DeGenaro for Plaintiff EEOC.

Kendra Smith, Katherine Hoffman, and Jack Peters, of Hall & Evans, L.L.C., for Defendant Midwest Farms, LLC.

c.  Statement as to when Rule 26(a)(1) disclosures were made or will be made.

The Parties will exchange Rule 26(a)(1) disclosures on December 1, 2023.

d.  Proposed changes, if any, in timing or requirement of disclosures under Fed. R. Civ. P. 26(a)(1).

The Parties agree to delay exchanging Rule 26(a)(1) disclosures until

December 1, 2023, to allow for additional time to confer on some of the

issues raised in this proposed Civil Scheduling Order and to avoid the

Thanksgiving holiday. The Parties agree to delay exchanging any Rule

26(a)(1) documents until after the Parties file a Joint Protective Order. The

Parties have set a deadline of no later than December 22, 2023 to file a Joint

Protective Order.

e.  Statement concerning any agreements to conduct informal discovery:

None at this time.

f.  Statement concerning any other agreements or procedures to reduce discovery and other litigation costs, including the use of a unified exhibit numbering system.

i.  The Parties agree to use continuous numbering for all deposition

exhibits.

ii.  The Parties agree to use the trial exhibit-labeling system consistent

with the practice standards of the judicial officer presiding over this

case.

iii.  ~~Plaintiff EEOC proposes the~~ The Parties ~~also agree~~ shall

adhere to the following notice and issuance procedures for

subpoenas served on non- parties. Notice of issuance of such

subpoenas with copies of the

proposed subpoenas shall be served on each party pursuant to Fed. R. Civ. P. 5(b)(2)(E) (by electronic means) and shall be made at least five business days prior to service of the subpoena on the non-party. Because Rule 45(a)(4) does not require any specific time frame for adequate notice, the agreed-upon five business day notice period shall provide an opportunity to minimize discovery expenses and motion practice by permitting the non-serving party or parties to meet and confer with the serving party regarding any objections and anticipated motion(s) to quash the subpoena, thereby avoiding unnecessarily increasing the costs of litigation. This agreement shall not, however, impose any obligation on the serving party to reach agreement with the non-serving party before causing the subpoena to be served on the non-party or parties or to modify the proposed discovery to meet objections the non-serving party or parties may raise. It shall simply be a five-day period within which the parties may confer and the non-serving party or parties may file an appropriate motion(s), if necessary. The Parties further agree that copies of any and all documents, ESI, or tangible things obtained through third-party subpoenas shall be provided to the other party within five business days of receipt by the serving party or at least three business days prior to a related deposition, if possible, whichever occurs earlier in time.

Defendant proposes the parties abide by the notice requirements under Federal Rule of Civil Procedure 45(a)(4), without imposing additional or specific requirements.

iv.   The Parties agree that they will take reasonable steps to protect against inadvertent disclosure of undiscoverable materials protected by the work product doctrine, attorney-client privilege, and governmental deliberative process privilege recognized by the federal courts ("Protected Materials"). The Parties also agree that the inadvertent disclosure of Protected Materials shall not constitute a waiver of the attorney work product doctrine, attorney-client privilege, or the government deliberative process privilege. Any party that discovers it has sent or received Protected Materials shall immediately notify the opposing party so that appropriate steps to return or destroy the Protected Materials may be taken. By operation of the Parties' agreement, the Parties are specifically afforded the protections of Fed. R. Evid. 502(d) and (e). This agreement supplements, and does not supersede, any protections already afforded by Fed. R. Evid. 502 or Fed. R. Civ. P. 26(b)(5)(B).

Midwest Farms does not agree that the EEOC has an attorney-client relationship with Ms. Denny or any other "aggrieved party" unless the EEOC specifically demonstrates that relationship exists.

Plaintiff EEOC affirmatively asserts it has an attorney-client

relationship with the Charging Party and Aggrieved Individuals.

**The Court will address assertions of privilege if and after a dispute arises as to a specific document or set of documents. The parties shall follow this Court's practice standards when raising discovery disputes**

v.   Plaintiff EEOC does not believe Defendant complied with their

conferral obligations regarding the Rule 26(f) conference.

Defendant refused to confer over a draft proposed scheduling

order or ESI as they believe they do not have to if they do not

presently know the factual allegations of every Aggrieved

Individual. The EEOC believes such fact questions should be

addressed through discovery and does not relieve the Defendant

from conferral obligations regarding the scheduling order or ESI.

g.   Statement as to whether the parties anticipate that their claims or defenses will involve extensive electronically stored information, or that a substantial amount of disclosure or discovery will involve information or records maintained in electronic form.

Plaintiff EEOC's Position:

The Parties had an initial Rule 26(f) call on November 1, 2023. However, the

Defendant was not willing to discuss ESI as Defendant believed this would

be premature. Plaintiff EEOC believes this case will involve ESI and that

pursuant to Rule 26(f) and the local rules, ~~the Parties are required to discuss~~

~~the following before November 22, 2023:~~

~~(1) steps taken to preserve electronically stored information;~~

~~(2) how to facilitate discovery of electronically stored~~

18

information, including form of production;

~~(3) how to limit the associated discovery costs and delay;~~

~~(4) how to avoid discovery disputes relating to electronic discovery;~~

~~(5) address claims of privilege or protection;~~

~~(6) review and discuss the Electronic Discovery Guidelines and Checklist;~~

~~(7) discuss an ESI Protocol and to set a deadline for the Parties to file a Joint ESI Protocol by December 22, 2023, and;~~

~~(8) discuss Defendant's client's information management systems and its operation, including how information is stored and how it can be retrieved.~~

~~The EEOC emailed the Defendant additional industry specific ESI questions on November 14, 2023 and requested a conferral call regarding ESI before November 22, 2023. The Defendant did not respond to the EEOC's email and continued their position that they cannot discuss ESI on a November 22, 2023 call. The EEOC believes Defendant must discuss these ESI issues and that the Parties should enter into an ESI Protocol. The EEOC intends to file a motion for the entry of an ESI Protocol.~~

Defendant Midwest Farms Position:

Defendant refers to the Court to its defenses and positions contained in above

Section 3(b).  Ms. Denny worked for Midwest Farms for approximately eight weeks as a Floater/ Swine Production Trainee, an entry level laborer position.  Ms. Denny made no complaints to Midwest Farms during her employment there and abandoned her job. There are documents pertaining to Ms. Denny's employment, and those documents have been produced to the EEOC as part of the EEOC's investigation into Ms. Denny's Charge. Accordingly, Defendant does not anticipate substantial electronic discovery with respect to the EEOC's allegations related to Ms. Denny.

During the EEOC's over four (4) year investigation into Ms. Denny's Charge, Midwest Farms received no notice of "other aggrieved individuals" until the EEOC completed its investigation and presented Midwest Farms with a proposed Conciliation Agreement.  At that time, counsel for Midwest Farms requested information as to the "other aggrieved individuals" and the allegations related to those individuals, but the EEOC refused to provide that information.  The EEOC has declined Midwest Farms' FOIA request for the Denny investigative file such that Midwest Farms has been unable to obtain information about the "other aggrieved individuals."  The EEOC's current lawsuit fails to provide Midwest Farms with fair notice of the allegations against it with respect to the "other aggrieved individuals."  Accordingly, Midwest Farms cannot take a position regarding electronic discovery with respect to the EEOC's allegations related to "other aggrieved individuals."

**The Parties are required to discuss the following:**

        **(1) steps taken to preserve electronically stored information;**

        **(2) how to facilitate discovery of electronically stored information, including form of production;**

(3) **how to limit the associated discovery costs and delay;**

(4) **how to avoid discovery disputes relating to electronic discovery;**
(5) **address claims of privilege or protection;**

(6) **review and discuss the Electronic Discovery Guidelines and Checklist; and**
(7) **discuss Defendant's client's information management systems and its operation, including how information is stored and how it can be retrieved.**

**On or before January 31, 2024, the parties shall submit a Joint Motion for Entry of an ESI Protocol. If the parties cannot agree on certain provisions, one party shall propose language and the other party shall set forth competing language in a redline comment to the proposed language.**

    h.  Statement summarizing the parties' discussions regarding the possibilities for promptly settling or resolving the case.

The Parties have discussed the possibility of settlement and have agreed to continue to engage in settlement discussions.

Midwest Farms remains open to Conciliation.  Midwest Farms requires additional information regarding the allegations relating to the "other aggrieved individuals" to properly evaluate Conciliation or settlement.

Plaintiff EEOC: Conciliation with the EEOC failed and the EEOC cannot reopen Conciliation. However, the EEOC remains open to engage in settlement discussions. The EEOC further advises the Court that because this case is a public civil rights enforcement action brought by the EEOC, any settlement or negotiated resolution would be submitted to the Court in the form of a consent decree, consistent with the EEOC's statutory and public responsibilities and its public litigation obligations.

**7.**
**CONSENT**

All parties **have not** consented to the exercise of jurisdiction of a magistrate judge.

**8.  DISCOVERY**
**LIMITATIONS**

    a.    Modifications which any party proposes to the presumptive numbers of depositions or interrogatories contained in the Federal Rules.

~~Plaintiff EEOC proposes~~ the presumptive limits of 10 depositions, excluding experts, and to 25 interrogatories shall apply.

~~Defendant is unable to take a position on the number of depositions and interrogatories required because Defendant does not yet know the number of alleged "other aggrieved parties," the factual basis for their allegations, or other similar information that would allow Defendant to determine what amount of discovery will be required to defend this matter.~~

~~Plaintiff EEOC proposes that an~~ An interrogatory asking for the factual support for each of Defendant's defenses will count as a single interrogatory.

~~Defendant Midwest Farms proposes that an~~ An interrogatory asking for the factual support for each of the "other aggrieved parties" claims will count as a single interrogatory.

    b.    Limitations which any party proposes on the length of depositions.

Unless otherwise stipulated or ordered by the Court, each deposition will be limited to one day of seven hours per deponent.

~~Plaintiff EEOC proposes the following~~ additional limitations to depositions: Depositions may be conducted by Zoom and the parties are to confer ahead of each deposition so that everyone is aware of the arrangements.

23

~~(1) If a deponent lives in Burlington, CO, or in Kit Carson County, the Parties agree to take their deposition in Burlington, CO;~~

~~(2) All other depositions will occur no further than 100 miles from the deponent's residence;~~

(3) Should a deponent require an interpreter, the noticing party will arrange and pay for the expense of an interpreter;

~~(4) If the party that notices a deposition has a preference to conduct the deposition in person, the Parties agree to conduct the deposition in person;~~

~~(5) If a party notices a remote deposition and the deponent does not have access to a location or technology for a remote deposition, the noticing party will arrange for a location and technology for the deponent.~~

~~Defendant does not agree to Plaintiff EEOC's additional limitations to depositions to the extent they impose additional expense, fees, and burden on Defendant. Defendant will agree to confer with Plaintiff regarding the manner in which depositions are taken, whether in-person or remotely, to seek mutual agreement by the parties where possible.~~

~~c.    Limitations which any party proposes on the number of requests for production and/or requests for admission.~~

~~Plaintiff EEOC proposes a total of 25 requests for production and 25 requests for admission per side.~~

~~Defendant Midwest Farms proposes that if there are more than 10 "other aggrieved individuals," Plaintiff and Defendant will each receive two additional requests for production and two additional requests for admission per each "aggrieved individual" beyond the tenth.~~

~~Requests for admission requesting only that a party authenticate one or more documents are unlimited.~~ Presumptive limits of 25 requests for production and 25 requests for admission are per group.

    d.    Deadline for service of Interrogatories, Requests for Production of Documents and/or Admissions:

The Parties shall set a deadline of 45 days prior to the close of fact discovery to serve interrogatories, requests for production of documents and/or admissions.

    e.    Other Planning or Discovery Orders

Pursuant to Section 6(d) above, the Parties agree to file a Joint Protective Order no later than ~~December 22, 2023.~~ January 31, 2024

The EEOC intends to file a motion for the entry of an ESI protocol.

## 9. CASE PLAN AND SCHEDULE

a.    Deadline for Joinder of Parties and Amendment of Pleadings:
January ~~8~~ 31, 2024

b.    Fact Discovery Cut-off: ~~August 22, 2024~~   May 10, 2024

    <u>Plaintiff EEOC's Position</u>:

The EEOC believes a 9-month Discovery Cut-Off date is appropriate in this case. This EEOC is seeking relief for additional aggrieved individuals yet to be identified through discovery. This case involves a rural hog farm near Burlington, Colorado and farmworkers who are often migrants, non-English speakers, and may be difficult to locate or access. Therefore, an additional 3 months of discovery is appropriate to allow the EEOC to attempt to locate these additional aggrieved individuals.

Defendant Midwest Farm's Position:

Midwest Farms agrees a 9-month Discovery Cut-Off date is appropriate with respect to the EEOC's allegations as to Ms. Denny. Midwest Farms cannot take a position regarding the timeframe of discovery to the extent Plaintiff asserts allegations as to "other aggrieved individuals" without information as to those allegations.

    c.     Dispositive Motion Deadline:

        ~~November 22, 2024~~ August 22, 2024

    d.     Expert Witness Disclosure

        1.    The parties shall identify anticipated fields of expert testimony, if any, by ~~September 23, 2024~~.June 14, 2024

        2.    Limitations which the parties propose on the use or number of expert witnesses.

        Two affirmative experts per side and one rebuttal expert per each affirmative expert, making for four total experts per side.

        3.    The parties shall designate all experts and provide opposing counsel and any pro se parties with all information specified in Fed. R. Civ. P. 26(a)(2) on or before ~~September 23, 2024~~ June 14, 2024

        4.    The parties shall designate all rebuttal experts and provide opposing counsel and any pro se party with all information specified in Fed. R. Civ. P. 26(a)(2) on or before ~~October 22, 2024~~.July 15, 2024

    e.     Identification of Persons to Be Deposed:

    Plaintiff EEOC initially identifies the following potential deponents for seven-hour depositions:

      1. Fed. R. Civ. P. 30(b)(6) Deposition of Midwest Farms, LLC

2.  Harley Briegel

3.  Oscar Cardona

4.  Doran Soncksen

5.  Kelly Soncksen

6.  Donna Hilt

7.  David Amundson

8.  Any relevant managers or supervisors from Defendant's five farms.

9.  Any relevant employees with Human Resources responsibilities.

The EEOC also reserves the right to take the deposition of any other persons identified during discovery or identified as a potential witness by Defendant.

Defendant cannot yet identify deponents, as defendant has not received the identities of the alleged "other aggrieved parties" and has not had an opportunity to investigate those parties' claims to determine which parties Defendant wishes to depose. Defendant can state, however, that it identifies Andria Denny for a seven-hour deposition.

Each side is limited to ten (10) depostions.

## 10.  DATES FOR FURTHER CONFERENCES

a.  A Video Status conference will be held on March 13, 2024 at 10:00 am (participant instructions attached), at which, a Final Pretrial Conference will be set.

b.  A final pretrial conference will be held in this case on _____ at o'clock ___.m. A Final Pretrial Order shall be prepared by the parties and submitted to the court no later than seven (7) days before the final pretrial conference.

## 11.  OTHER SCHEDULING MATTERS

a.  Identify those discovery or scheduling issues, if any, on which counsel after a good faith effort, were unable to reach an agreement.

1.  Whether the EEOC has attorney-client privilege with Ms. Denny and alleged "other aggrieved parties."

Plaintiff EEOC asserts that it has an attorney-client relationship with Ms. Denny and may potentially have an attorney-client relationship with some or all of the other current or former employees identified in the complaint only as "aggrieved parties." Defendant challenges whether this relationship exists, absent some affirmative proof of an attorney-client relationship. Whether the EEOC has an attorney-client relationship is consequential, since that relationship would grant privilege to any communications that might otherwise be discoverable, would prohibit Defendant's counsel from contacting Ms. Denny and any other "aggrieved parties" the EEOC identifies as having the relationship, under Colo. R.P.C. 4.2, and would have a variety of other impacts on this matter.

Judge Boland addressed a nearly identical issue in 2006 and ruled that, "[t]he EEOC's actions merely in filing an enforcement case and identifying a group of people as being among the allegedly aggrieved parties, without more, is insufficient to create an attorney-client relationship between the allegedly aggrieved parties and the EEOC." *EEOC v. Albertson's, Inc.*, Civil Action No. 06-cv-01273-WYD-BNB, 2006 U.S. Dist. LEXIS 72378, at *18 (D. Colo. Oct. 4, 2006). The EEOC challenged this ruling and Judge Daniel affirmed it. *See EEOC v. Albertson's, Inc.*, Civil Action No. 06-CV-01273-WYD-BNB, 2006 U.S. Dist. LEXIS 83526, at *3 (D. Colo. Nov. 14, 2006) ("Plaintiff cites to no authority which holds that an attorney-client relationship exists in a Title VII action prior to the moment the individual seeks and receives the legal advice of the EEOC.").

This ruling applies equally to the facts of this case. The mere filing of this action by the EEOC does not create an attorney-client relationship. This is especially so given that the EEOC has filed this action in its own name and under its own enforcement power, not in the name of Ms. Denny or others.

Additionally, there is no evidence that an attorney-client relationship exists. "In Colorado, 'there must be a showing that a person sought and received legal advice from the attorney concerning the legal consequences of the person's past or contemplated action' in order to establish an attorney-client relationship based on the conduct of the parties." *Med Safe Nw., Inc. v. Medvial, Inc.*, 1 F. App'x 795, 801 (10th Cir. 2001) (quoting *Turkey Creek, LLC v. Rosania*, 953 P.2d 1306, 1311 (Colo. App. 1998)). And "'the formation of a relationship between an attorney and his or her client is based upon contract, which may be either express or implied by the conduct of the parties.'" *Id.* at 801 n. 12 (quoting *Turkey Creek* at 1311)). Colorado law governing attorney-client relationships controls here because this Court has adopted the Colorado Rules of Professional Conduct as its own rules, with limited exceptions not applicable here. *See* D.C.Colo.LAttyR 2(a).

Defendant is also not aware of any evidence that Ms. Denny or any of the "aggrieved parties" have entered into an express or implied contract for representation with the EEOC and that Ms. Denny or the other parties have "'sought and received legal advice from the attorney concerning the legal consequences of the person's past or contemplated action….'" Absent some showing that an attorney-client relationship exists, Defendant should be allowed to contact Ms. Denny and any other "aggrieved party" without counsel for the EEOC present and the EEOC should not be able to rely on attorney-client privilege to protect any records from disclosure.

Defendant will brief this issue more thoroughly at the request of the Court.

Plaintiff EEOC: The EEOC was not aware Defendant takes the position the EEOC does not have an attorney-client relationship with Charging Party Andria Denny until it received Defendant's redlines to the proposed scheduling order on November 22, 2023. As such, the Defendant has not attempted to confer with the EEOC over this issue. The EEOC affirmatively states that it has an attorney-client relationship with the Charging Party and that she should only be contacted through the EEOC. Similarly, the EEOC has an attorney-client relationship with any identified Aggrieved Individual that seeks legal advice from the EEOC. The *EEOC v. Albertson's* case cited by Defendant recognizes an attorney-client relationship exists in a Title VII action the moment an individual seeks and receives the legal advice of the EEOC. Civil Action No. 06-CV-01273-WYD-BNB, 2006 U.S. Dist. LEXIS 83526, at *3 (D. Colo. Nov. 14, 2006).

While the EEOC does not believe the scheduling order is an appropriate manner to contest the EEOC's attorney-client relationships, it can provide further briefing on this issue.

2.  <u>Whether the EEOC must provide a list of Defendant's employees with whom the EEOC has already or intends to ~~made~~make contact.</u>

Defendant understands that the EEOC has solicited information from Defendant's employees after receiving notice that Defendant is represented by undersigned counsel in this lawsuit. Defendant has asked the EEOC to provide a copy of any document sent to employees soliciting information and to provide a list of all employees from whom the EEOC has solicited information. The EEOC ~~has~~ declined <u>this request.</u>

Defendant is concerned that the EEOC may be inadvertently communicating with Midwest Farms employees or agents who fall within Colo. R.P.C. 4.2. That R~~r~~ule bars communications with anyone known to be represented by counsel in the matter.

29

Defendant understands the EEOC's position to be that it can communicate with anyone who is not in a managerial role. RPC 4.2, is, however, more nuanced. Comment 7 to RPC 4.2 explains that the rule prohibits communication "with a constituent of the organization who supervises, directs or regularly consults with the organization's lawyer concerning the matter or has authority to obligate the organization with respect to the matter or whose act or omission in connection with the matter may be imputed to the organization for purposes of civil or criminal liability." RPC 4.2, Comment 7.

While many of the people who fall within this list may be managers, that is not necessarily the case. For example, in *Roe v. Karval Sch. Dist. Re23*, Civil Action No. 12-cv-00239-WYD-KLM, 2013 U.S. Dist. LEXIS 52952, at *5-6 (D. Colo. Apr. 12, 2013) (Mix, J.), the court determined that a secretary for a school district fell within RPC 4.2 due to her role as a records custodian, her communication with counsel for the school district, and the fact that she signed interrogatories. While a determination of who falls within RPC 4.2 will always be fact specific, the Order in *Roe v. Karval* shows that the Rule does not apply only to those in managerial roles.

Counsel for Midwest Farms therefore respectfully moves the Court to order Plaintiff EEOC to provide a list of employees with whom it intends to speak so that counsel for Midwest Farms can notify the EEOC of any employees whom Midwest Farms believe qualify as constituents under RPC 4.2. Counsel for Midwest Farms will ensure this information is not used to retaliate against any current employees.

Plaintiff EEOC: The EEOC does not believe this is an appropriate issue for a scheduling order and should be addressed through discovery. Regardless, any list created by the EEOC of people it would like to contact is protected attorney work product. The EEOC told Defendant that it is not attempting to contact any of Defendant's current managers. The Defendant can put the EEOC on notice of which employees they believe can legally bind the Defendant without the EEOC needing to send Defendant a list of its own employees.

b. Anticipated length of trial and whether trial is to the court or jury.

Plaintiff estimates a jury trial of seven to ten days.

c. Identify pretrial proceedings, if any, that the parties believe may be more efficiently or economically conducted in the District Court's facilities at 212 N. Wahsatch Street,

Colorado Springs, Colorado 80903-3476; Wayne Aspinall U.S. Courthouse/Federal Building, 402 Rood Avenue, Grand Junction, Colorado 81501-2520; or the U.S. Courthouse/Federal Building, , La Plata County Courthouse 1060 E. 2nd Avenue, Suite 150, Durango, Colorado 81301.

None at this time.

## 12.  NOTICE TO COUNSEL AND PRO SE PARTIES

The parties filing motions for extension of time or continuances must comply with D.C.COLO.LCivR 6.1(c) by serving the motion contemporaneously upon the moving attorney's client.

Counsel will be expected to be familiar and to comply with the Pretrial and Trial Procedures or Practice Standards established by the judicial officer presiding over the trial of this case.

With respect to discovery disputes, parties must comply with D.C.COLO.LCivR 7.1(a) and Magistrate Judge Dominguez Braswell's practice standards.

Counsel and unrepresented parties are reminded that any change of contact information must be reported and filed with the Court pursuant to the applicable local rule.

## 13.  AMENDMENTS TO SCHEDULING ORDER

The scheduling order may be altered or amended only upon a showing of

good cause, pursuant to Federal Rule of Civil Procedure 16.

DATED 10th day of January, 2024.

BY THE COURT:

Maritza Dominguez Braswell
United States Magistrate Judge

APPROVED:

*/s/ Lauren Duke*
Lauren Duke
Carey DeGenaro
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Denver Field Office
950 17th Street, Suite 300
Denver, CO 80202
(720) 779-3621
(720) 779-3649
lauren.duke@eeoc.gov
carey.degenaro@eeoc.gov
*Attorneys for Plaintiff EEOC*


*/s/ Kendra K. Smith*
Kendra K. Smith
Katherine N. Hoffman
John F. Peters
Hall & Evans, L.L.C.
1001 Seventeenth Street, Suite 300
Denver, CO 80202
(303) 628-3300
smithk@hallevans.com
hoffmank@hallevans.com
petersj@hallevans.com

*Attorneys for Defendant Midwest Farms, LLC*