IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-02531-PAB-MDB

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

Plaintiff,

v.

MIDWEST FARMS, LLC, and MIDWEST CAPITAL SERVICES, LLC,

Defendants.

**SECOND AMENDED COMPLAINT AND JURY DEMAND**

### NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 ("Title VII") and Title I of the Civil Rights Act of 1991 ("Title I") to correct unlawful employment practices on the basis of sex, to correct unlawful retaliation, and to provide appropriate relief to Andria Denny and other aggrieved employees who were adversely affected by such practices during their employment with Midwest Farms, LLC ("Midwest Farms") and Midwest Capital Services, LLC ("Midwest Capital") (collectively, "Defendants"). The Equal Employment Opportunity Commission ("EEOC") seeks relief for Denny and a class of other aggrieved individuals who were sexually harassed by male managerial officials, supervisors, and/or co-workers at Midwest Farms, including, but not limited to, unwelcome sexual requests, unwelcome verbal sexual harassment, and a male manager entering the women's dressing room unannounced, which created a hostile work environment for Denny and other female employees because of their sex.

1

The EEOC also seeks relief for Denny and a class other aggrieved individuals who were forced to resign their employment because of the intolerable work conditions they faced. Finally, the EEOC seeks relief for a class of aggrieved individuals who suffered retaliation because of their opposition to unlawful employment practices.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.

2. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII, 42 U.S.C.§ 2000e-5(f)(1) and (3), and pursuant to Section 102 of Title I, 42 U.S.C. § 1981a.

3. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Colorado.

## PARTIES

**Plaintiff EEOC**

4. Plaintiff EEOC is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

5. While the EEOC is the Plaintiff in this matter, it seeks relief on behalf of Denny and a class of other aggrieved individuals who suffered harassment, constructive discharge, and/or retaliation.

**Defendant Midwest Farms**

6.  Midwest Farms is a Colorado limited liability company with its principal place of business at 290 14th Street, Burlington, CO 80807.

7.  Midwest Farms was incorporated in Colorado in 1994 by members Ronald W. Houser and R.W. Houser, Inc., both with the address of 2700 Midwest Drive, Onalaska, WI 54650.

8.  At all relevant times, Ronald W. Houser has been an owner of Midwest Farms.

9.  Until November 23, 2021, the mailing address for Midwest Farms's Registered Agent was 2700 Midwest Drive, Onalaska, WI 54650.

10. The address of the individual who filed Midwest Farms's most recent periodic report to the Colorado Secretary of State is 2700 Midwest Drive, Onalaska, WI 54650.

11. At all relevant times, Midwest Farms has been continuously doing business in the State of Colorado.

12. At all relevant times, Midwest Farms has had at least 15 employees.

13. At all relevant times, Midwest Farms has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

**Defendant Midwest Capital**

14. Midwest Capital is a Wisconsin Limited Liability Company with its principal place of business at 2700 Midwest Drive, Onalaska, WI 54650.

15. The office for Midwest Capital's Registered Agent is also located at 2700 Midwest Drive, Onalaska, WI 54650.

16. Midwest Capital describes itself as "a privately owned limited liability company located in Onalaska, WI," whose "primary focus is to provide fee-based business management services to its customers" including "budget development and monitoring, accounting, banking, human resources, insurance, legal, contracting, facilities management and maintenance and other business services typically required by small businesses."

17. Midwest Capital also describes itself as "a 'family office' for its owner" that "provides management services for all of the owner's different investments, including a hog production facility located in Burlington, CO ("Midwest Farms, LLC") . . . ."

18. At all relevant times, Ronald W. Houser has been an owner of Midwest Capital.

19. At all relevant times, Midwest Capital has been continuously doing business in the State of Colorado.

20. At all relevant times, Midwest Capital has had at least 15 employees.

21. At all relevant times, Midwest Capital has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

**Defendants Comprise a Single Employer/Integrated Enterprise**

22. At all relevant times, Defendants Midwest Farms and Midwest Capital comprised a single employer/integrated enterprise.

23. Defendants share common ownership and financial control.

24. Ronald W. Houser was the original member and owner, and he has at all times continued to be an owner, of each entity.

25. Midwest Capital performs administrative and management services for Midwest Farms.

26. Upon information and belief, Midwest Farms and Midwest Capital share common management and centralized control of labor relations.

27. The services provided by Midwest Capital to Midwest Farms include: accounting, insurance, legal, human resources, contracting, facilities management and maintenance, and other business services.

## ADMINISTRATIVE PROCEDURES

28. More than 30 days prior to the institution of this lawsuit, Denny filed a charge of discrimination with the EEOC alleging violations of Title VII by Midwest Farms.

29. The EEOC provided Defendant with notice of the charge of discrimination.

30. The EEOC investigated the charge of discrimination and Midwest Farms participated in the investigation.

31. On May 25, 2023, the EEOC issued Defendant a Letter of Determination finding reasonable cause to believe that Title VII was violated.

32. The EEOC's determination included an invitation for Midwest Farms to join with the EEOC in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

33. The EEOC and Midwest Farms were unable to reach an agreement through the conciliation process.

34. On September 12, 2023, the EEOC issued a Notice of Failure of Conciliation to Defendant advising it that the agency was unable to secure from Midwest Farms a conciliation agreement acceptable to the EEOC.

35. All conditions precedent to the institution of this lawsuit have been fulfilled.

## GENERAL ALLEGATIONS

36. At all relevant times, Midwest Farms owned and operated multiple farms located near or around Burlington, Colorado.

37. Midwest Farms's business includes raising hogs on a 9,000-acre rural site near Burlington.

38. On or about September 14, 2018, Midwest Farms hired Denny to work as a Floater/Swine Production Trainee at its Swine Production Farm.

39. Denny's job duties included transporting hogs of various sizes between buildings, feeding and caring for hogs, and performing cleaning at the buildings where the hogs were housed.

40. Because Denny worked directly with hogs, Midwest Farms required Denny to comply with its Biosecurity Management Plan, which mandated employees to "shower-in" at the start of the workday.

41. Denny was required to remove her street clothes and shoes, shower, and change into work attire furnished by Midwest Farms.

42. During all relevant times, Harley Jay Briegel was Denny's manager and supervisor.

43. On at least three separate occasions, Briegel entered the women's dressing room without knocking or announcing his presence while Denny was undressing or undressed.

44. The first incident occurred on or about September 10, 2018, when Briegel entered the women's dressing room without knocking while Denny was undressing.

45. On or about October 7, 2018, Briegel walked into the women's dressing room a second time while Denny was undressed.

46. This time, Denny was taking a shower, which Briegel observed.

47. During the third incident, which occurred on or about November 7, 2018, Denny was sitting in the dressing room waiting for her employer-issued uniform and undergarments to dry following Midwest Farms's sanitary requirements when working with swine.

48. Briegel entered the dressing room unannounced and demanded that Denny report to her worksite.

49. Denny yelled at Briegel for entering the dressing room and stated she was waiting for her uniform and undergarments to dry before entering the swine area.

50. In response, Briegel forced Denny to work the remainder of her shift in a men's sized-medium jumpsuit, which did not fit properly, and without undergarments.

51. Embarrassed and humiliated by this experience, Denny called Midwest Farms's main office to complaint about Briegel's behavior.

52. Denny spoke to Office Assistant Kelly Soncksen, who relayed Denny's complaint to Production Manager Doran Soncksen.

53. Production Manager Soncksen told Denny, indirectly through Office Assistant Soncksen, that Denny should "work things out" with Briegel on her own.

54. When Defendants' management did nothing to stop the sexual harassment Denny reported, she realized her employer would do nothing to protect her from a manager who was sexually harassing her.

55. In addition to the unrelenting sexual harassment, management's failure to address Denny's sexual harassment complaint made working conditions for her intolerable and hopeless.

56. Denny was forced to resign from Midwest Farms, and she did so on or around November 7, 2018.

**Other Aggrieved Individuals**

57. The EEOC seeks relief on behalf of Denny as well as a class of other aggrieved individuals.

58. Like Denny, a class of other female employees were sexually harassed by managerial officials, supervisors, and/or co-workers at Midwest Farms.

59. Like Denny, a class of other female employees were subjected to a hostile work environment because of sex at Midwest Farms.

60. A class of other female employees were subjected to unwelcome sexual requests, sexual advances, vulgar sexual language, and sexual propositions by male managerial officials, supervisors, and/or co-workers at Midwest Farms.

61. A class of other female employees were subjected to unwelcome sexual conduct and/or touching by male managerial officials, supervisors, and/or co-workers at Midwest Farms.

62. For instance, Oscar Corona, one of Midwest Farms's managers, regularly subjected female employees to vulgar sexual language and sexual propositions.

63. Corona would also kiss female employees in front of other employees.

64. Like Denny, a class of other female employees at Midwest Farms complained about sexual harassment and/or retaliation by managerial officials, supervisors, and/or co-workers.

65. Despite complaints from female employees about sexual harassment and retaliation, Midwest Farms failed to take adequate corrective and remedial steps to correct or prevent the harassment and retaliation.

66. Midwest Farms also retaliated against a class of employees after they complained about harassment or retaliation, including subjecting them to adverse terms and conditions of employment and retaliatory discharge.

67. For instance, when one female employee opposed her manager's sexual harassment by rejecting his sexual advances, the manager retaliated against her by giving her the most difficult jobs and schedules.

68. This same female employee was later discharged by Midwest Farms because she complained about sexual harassment and retaliation to management and Human Resources.

## STATEMENT OF CLAIMS

69. Since at least September 2018 to present, Defendants have engaged in unlawful employment practices against Denny and a class of other aggrieved individuals in violation of Sections 703(a) and 704(a) of Title VII, 42 U.S.C. §§ 2000e-2(a), 2000e-3(a).

### FIRST CLAIM FOR RELIEF
### Harassment/Hostile Work Environment
### (42 U.S.C. § 2000e-2(a)(1))

70. The allegations contained in the foregoing paragraphs are hereby incorporated by reference.

71. The EEOC brings this first claim for relief on behalf of Denny and a class of other aggrieved female employees.

72. Defendants discriminated against Denny and a class of other aggrieved female employees in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1), by harassing them and creating a hostile work environment because of their sex, female.

73. The offensive conduct described in the preceding paragraphs was sufficiently severe or pervasive to alter the terms and conditions of employment for Denny and a class of other aggrieved female employees.

74. As a manager, the actions of Briegel constitute the actions of Defendants for which they are liable.

75. As a manager, the actions of Corona constitute the actions of Defendants for which they are liable.

76. Sexual harassment by other male managers of female employees likewise constitute the actions of Defendants for which they are liable.

77. Defendants failed to take reasonable measures to prevent and promptly correct discriminatory or harassing behavior in the workplace.

78. Defendants knew of, or in the exercise of reasonable care should have known of, the hostile or offensive work environment suffered by Denny and a class of other aggrieved female employees because of their sex, female.

79. Female employees at Midwest Farms complained to management and Human Resources about the hostile or offensive work environment, but Defendants negligently failed to take timely preventative or remedial actions.

80. The effect of the practices complained of above has been to deprive Denny and a class of other aggrieved female employees of equal employment opportunities and otherwise adversely affect their status as an employee because of their sex, female.

81. The unlawful employment practices complained of above were intentional.

82. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Denny and a class of other female employees of Midwest Farms.

## SECOND CLAIM FOR RELIEF
### Constructive Discharge
### (42 U.S.C. §§ 2000e-2(a)(1))

83. The allegations contained in the foregoing paragraphs are hereby incorporated by reference.

84. The EEOC brings this second claim for relief on behalf of Denny and a class of other aggrieved employees.

85. Denny and a class of other aggrieved employees who worked at Midwest Farms were constructively discharged in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a)(1).

86. Denny and a class of other aggrieved employees faced working conditions so intolerable they reasonably felt compelled to resign.

87. The effect of the practices complained of above has been to deprive Denny and a class of other aggrieved employees of equal employment opportunities and otherwise affect adversely affect their status as employees because of their sex, female.

88. The unlawful employment practices complained of above were intentional.

89. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Denny and a class of other aggrieved employees of Midwest Farms.

### THIRD CLAIM FOR RELIEF
### Retaliation
### (42 U.S.C. § 2000e-3(a))

90. The allegations contained in the foregoing paragraphs are hereby incorporated by reference.

91. The EEOC brings this third claim for relief on behalf of a class of aggrieved employees.

92. Defendants unlawfully retaliated against a class of aggrieved employees in violation of 704(a) of Title VII, 42 U.S.C. § 2000e-3(a), by discriminating against them for opposing and/or complaining about unlawful employment practices, including sexual harassment.

93. The class of aggrieved employees who opposed the sexual harassment and/or the hostile work environment at Midwest Farms suffered adverse terms and conditions of employment and discharge because they engaged in protected activity by opposing the sexual harassment.

94. The class of aggrieved employees who complained about sexual harassment and/or the hostile work environment at Midwest Farms suffered adverse terms and conditions of employment and discharge because they complained about sexual harassment.

95. The class of aggrieved employees who complained about retaliation at Midwest Farms suffered adverse terms and conditions of employment and discharge because they complained about retaliation.

96. The class of aggrieved employees suffered adverse terms and conditions of employment and discharge because they engaged in protected activity by opposing and complaining about harassment, discrimination, and retaliation.

97. The effect of the practices complained of above has been to deprive a class of aggrieved employees of equal employment opportunities and otherwise adversely affect their status as employees because they opposed and complained about unlawful employment practices.

98. The unlawful retaliatory employment practices complained of above were intentional.

99. The unlawful retaliatory employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of employees of Midwest Farms.

**PRAYER FOR RELIEF**

Wherefore, the EEOC respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendants, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from engaging in any employment practice which discriminates on the basis of sex, including sexual harassment, and from retaliating against employees who oppose unlawful employment practices.

B. Order Defendants to institute and carry out policies, practices, and programs which provide equal employment opportunities for women and for individuals who oppose unlawful employment practices and which eradicate the effects of the Defendants' past and present unlawful employment practices, including sex discrimination, sexual harassment, and retaliation.

C. Order Defendants to make whole Denny and other aggrieved employees by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of the Defendants' unlawful employment practices, including but not limited to lost wages, benefits, and compensation for all monetary losses of Denny and other aggrieved employees.

D. Order Defendants to make whole Denny and other aggrieved employees by providing compensation for past and future nonpecuniary losses resulting from the unlawful employment practices complained of above, including emotional pain and suffering, in amounts to be determined at trial.

E. Order Defendants to pay Denny and other aggrieved employees punitive damages for the Defendant's malicious and reckless conduct, as described above, in amounts to be determined at trial.

F. Grant such further relief as the Court deems necessary and proper in the public interest.

G. Award the EEOC its costs of this action.

## JURY TRIAL DEMAND

The EEOC requests a jury trial on all questions of fact raised by its complaint.

Karla Gilbride<br>
General Counsel<br><br>
Christopher Lage<br>
Deputy General Counsel<br>
Mary Jo O'Neill<br>
Regional Attorney<br>
Phoenix District Office<br><br>
Laurie Jaeckel<br>
Assistant Regional Attorney<br><br>
<u>s/ Carey DeGenaro</u><br>
Lauren Duke<br>
Carey DeGenaro<br>
Trial Attorneys<br>
EQUAL EMPLOYMENT<br>
OPPORTUNITY COMMISSION<br>
950 17th Street, Suite 300<br>
Denver, CO 80202<br>
lauren.duke@eeoc.gov<br>
carey.degenaro@eeoc.gov

**PLEASE NOTE**: For purposes of service upon the EEOC, it is sufficient that pleadings, notices, and court documents be served upon the Trial Attorneys. Duplicate service is not required on the General Counsel and Associate General Counsel in Washington, D.C.