**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:23-cv-02531-PAB-MDB

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

Plaintiff,

v.

MIDWEST FARMS, LLC, and MIDWEST CAPITAL SERVICES, LLC,

Defendants.

---

**ORDER FOR DISCOVERY RELATING TO ELECTRONICALLY
STORED INFORMATION**

---

The parties Plaintiff Equal Employment Opportunity Commission ("EEOC") and

Defendants Midwest Farms, LLC, ("Midwest Farms")[1], jointly agree to conduct discovery in a

cooperative manner in adherence to the proportionality standards of the Federal Rules of Civil

Procedure and propose that these provisions shall govern preservation of electronically stored

information ("ESI") relating to this litigation and the scope of and protocols for production of

ESI during this Action.

Nothing herein shall be deemed to limit or waive any party's right to object to or limit

discovery requests, including any requests for ESI.

## I.      DEFINITIONS

---

[1] Co-defendant Midwest Capital Services, LLC was only recently served and is evaluating whether it will retain the same counsel as Midwest Farms. The parties are, therefore, not yet able to address ESI issues involving Midwest Capital but will file a supplement or amendment to this Stipulation once the parties have been able to further confer regarding whether any changes to this Stipulation are necessary based on ESI issues involving Midwest Capital.

A. **"Unstructured Data"** refers to free-form data which either does not have a data structure or has a data structure not easily readable by a computer without the use of a specific program designed to interpret the data, created without limitations on formatting or content by the program with which it is being created. Examples include word processing documents, slide presentations, Email, or short messages, including text, Microsoft Teams, WhatsApp, and Slack messages.

B. **"User-Created Files"** means any ESI created by entering text or content composed by an individual person through the use of any local or network software application and stored by a user, such as spreadsheets, word processing documents, and other similar ESI.

C. "**Structured Data**" is data stored in a structured format, such as databases, spreadsheets, tables, or data sets according to specific form and content rules as defined by each field of the database.

D. "**Search Terms**" means a word or a string of words or phrases joined by proximity and Boolean connectors and other syntax designed to capture potentially relevant ESI.

E. **"Database Systems"** means any system consisting of a group of integrated files, which is stored in one location or distributed across multiple locations in a network, and made available to several users, and consisting of a tabulation of corresponding information which can be searched, organized, classified, and accessed in multiple ways.

## II.    LIAISON

The parties have identified liaisons, Karl Tetzlaff for EEOC, and Jack Peters for Midwest Farms, who are and will be knowledgeable about and responsible for discussing their respective ESI. Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

## III.    RELEVANT ESI SOURCES AND CUSTODIANS

The parties have in good faith identified in <u>Exhibit A</u> ("Relevant ESI Sources") the Email, User-Created Files, Database Systems, and Mobile Devices that are reasonably believed to contain relevant information during the Temporal Scope of Preservation (*See* <u>Section IV</u>).

The parties also agree that it is reasonable and appropriate to limit the scope of discovery of unstructured ESI (Emails and User-Created Files) to the individuals listed in <u>Exhibit B</u> ("Custodians").

To the extent that the parties identify additional ESI sources for preservation and potential production, or if upon further investigation revision to the existing descriptions or identified custodians is necessary, the parties shall identify the additional sources or custodians and/or revise existing descriptions or custodians.

## IV.   PRESERVATION OBLIGATIONS

The parties shall preserve relevant information from the sources and custodians identified in Exhibits A and B. The parties shall take reasonable steps to preserve relevant ESI created or modified that is within their possession, custody or control. This may include amending or ceasing any passive deletion processes or policies in which information, documents, or files are deleted, destroyed, removed, or otherwise disposed of. The parties are also required to preserve any documents known to contain relevant information regardless of the created or modified date. Relevant information includes any information related to sexual harassment or retaliation complaints, allegations, investigations, or claims made by or against any Midwest Farms employee between September 1, 2017 and present, as well as information related to Midwest Farms's sexual harassment and retaliation practices and policies between September 1, 2017 and present. This definition of relevance is limited to this stipulation and does not extend relevance determinations in this case in any other context.

There may be circumstances in this case that do not warrant the preservation of certain ESI. Moreover, depending on the representations made in ongoing conferral regarding ESI, the parties may agree that the remote possibility of additional relevant information existing in not reasonably accessible sources is substantially outweighed by the burden and cost of preservation of ESI from those sources. However, the parties have not yet reached agreement on any ESI that is not reasonably accessible. Even if the parties reach such an agreement in the future, then upon a showing of good cause by the requesting party, the parties reserve their right to seek curative measures.

The parties agree that the following ESI is not reasonably accessible:

1.  Deleted, shadowed, fragmented, residual, or cached data, temporary files, random access memory ("RAM"), or ESI that would only be accessible by taking a forensic (bit stream) image of a device;

2.  Server, system, or network logs; and

3.  Back up tapes or other storage media used for disaster recovery purposes where the data on the tapes is duplicative of data stored elsewhere and is being preserved by the party.

Additional data sources may be identified as a result of investigation, and the parties shall promptly identify any additional data sources that they believe are not reasonably accessible. The parties will meet and confer about such ESI as additional data sources are identified. However, nothing herein shall prevent a party from subsequently requesting that ESI identified above be produced if specific facts demonstrate a particular need for such evidence that justifies the burden of preservation and retrieval. Further, nothing herein shall prevent a party from requesting and receiving additional detail and explanation from the producing party regarding any of the above items that would allow the requesting party to further evaluate the substance of the information and the burden and costs of retrieving and providing this information. In

addition, the parties agree to continue to meet and confer regarding identification, preservation, and production with regard to specific data systems.

## V.    SEARCH AND COLLECTION

### A.    Scope

The parties shall search and collect relevant information from the sources and custodians identified in Exhibits A and B.

Although this Protocol envisions the use of electronic search methodologies, *see infra*, to search for and collect potentially responsive documents, where a party knows or reasonably should know that information is relevant and responsive to a document request, it shall not withhold that document from production on the basis that its electronic search methodology did not otherwise identify the document.

### B.    Supervision of Collection

The parties agree that any collection of ESI shall be done under the proper supervision of counsel and that unsupervised ESI self-collection does not comply with Federal Rule of Civil Procedure 26(g).

### C.    The Use of Search Terms to Search and Collect Unstructured ESI

If the producing party determines the use of search terms is necessary and appropriate to search and collect relevant and/or responsive ESI, the parties shall collaborate and cooperate in good faith and attempt to exhaust all efforts to reach an agreement on a set(s) of search terms to be used. The parties shall collaborate and cooperate in good faith and attempt to exhaust all efforts to reach agreement about additional set(s) of search terms or other culling criteria to identify relevant Short Messages, including, but not limited to, Slack, Microsoft Teams, WhatsApp, Facebook Messenger, Google Chat, or other relevant platforms.

1.      Within a reasonable period of time following disclosure of a party's proposed search technology or process, the producing party shall develop and share with the requesting party a list of proposed search terms. At the same time, if the producing party is using a tool other than Relativity, the producing party shall also provide information to the requesting party regarding the syntax and search capabilities and limitations of its ESI tool with respect to search terms (e.g., ordering of search terms and parentheses, what wildcard options are available, stemming capabilities, noise words, Boolean capabilities, etc.) sufficient for the requesting party to understand the search terms proposed and to offer counterproposals to them.

2.      The requesting party shall provide any revisions or additions to the producing party's proposed search terms ("counterproposals"), if any, within a reasonable time (to be agreed upon between the parties) after receipt of proposed search terms from the producing party.

3.      After receipt of the first set of revisions or additions from the requesting party (as set forth above), and within a reasonable period after receipt of the counterproposals (to be agreed upon by the parties) or receipt of any revisions in subsequent comments rounds, if applicable, the producing party will identify which of the requesting party's proposed search terms the producing party agrees to use, and which terms it rejects, and shall propose alternatives to counterproposals to which it objects. Upon request, the producing party shall confer with the requesting party concerning the producing party's reasoning behind why particular search terms are not acceptable and possible alternative

search terms. The producing party shall then, in a reasonable period of time, but no more than 15 business days, supply a Search Terms Hit Report ("STH Report"), as described in subsection (5) below, for all search terms that were accepted, rejected, and all proposed alternatives.

4. The parties shall reasonably repeat the process in subsection (2) and (3) in good faith to come to a final agreement regarding search terms. The parties will meet and confer regarding disputed search terms and STH Reports as needed. The parties shall meet and confer to attempt to develop a mutually agreeable means of evaluating the effectiveness of disputed search terms in identifying responsive documents, such as a responsiveness review of a statistically significant random sample of the documents hit upon by a disputed term.

5. **STH Report**: STH Reports will be provided in Excel (or other format as agreed to by the parties). An STH Report should, to the degree it is technically feasible to do so: (a) exclude from the number of hits any duplicates; (b) provide the number of documents hit by the search term, including family members; and (c) the number of unique documents hit by each search term (i.e., the number of documents hit by that search string and no others, and not previously produced in this litigation).

6. **Validation:** Once the parties have agreed to a list of search terms subject to the process outlined above, the parties shall meet and confer to attempt to develop a mutually agreed methodology to determine effectiveness of search terms in identifying responsive documents. The parties shall meet and confer regarding whether further modification to the final set of search terms is necessary.

7.      The mere fact that a document is hit or captured by the application of any agreed upon search terms does not mean that such document is necessarily responsive to any propounded discovery request or is otherwise relevant to this litigation.

### D.      Structured Database Systems

To the extent a response to discovery requires the search and collection of discoverable ESI contained in a structured database system, the parties shall meet and confer in an attempt to agree upon a set of reasonable queries to be made for discoverable information and generate a report in a reasonably usable and exportable electronic file for review by the requesting party.

### E.      Custodial Mobile Device Data

For Custodians agreed on by the parties in Exhibit B or ordered by the Court, a producing party will take reasonable steps to identify whether any unique, responsive, discoverable communications are located on any mobile device in the "possession, custody, or control" (as defined under the Federal Rules and case law) of the producing party. The parties dispute whether personal cell phones of custodians are within the parties' possession, custody, or control.

## VI.    PROCESSING, FILTERING AND REVIEW

The processing and review of Unstructured ESI may consist of any of the following processes selected by the producing party: (1) loading of ESI into a review platform; (2) the application of file type, date, and other metadata filters; (3) the use of search terms, as outlined *infra* in Section VI(A); (4) de-NISTing, and deduplication of identical files, as outlined *infra* in Section VI(B); (5) the use of analytics technologies, including email threading, clustering, filtering, categorization, and technology assisted review/ predictive coding, as outlined *infra* in Sections VI(C)-(F); and (6) attorney review for responsiveness.

Parties will review the results of the above efforts for privilege or other protection from disclosure and all responsive, non-privileged ESI shall be produced in the format described below in Section VII.

### A.   The Use of Search Terms on Unstructured ESI to Filter and Review

If the producing party finds it appropriate to apply search terms to cull the collected ESI before review, the parties shall follow the process outlined in Section V(C), *supra*.

### B.   Deduplication and De-NISTing System Files

The parties agree to make good faith efforts to globally de-dupe Custodian ESI on hash values to the extent that it is possible, meaning that only one copy of a document may be produced even if the same document is within other Custodians' ESI; however, all custodians must be identified in a custodian field in the load file for each duplicate document.

The parties agree that system and application files without user created content (as identified by matching to the NIST National Software Reference Library database) need not be processed, reviewed or produced. This process is commonly referred to as "De-NISTing." The producing party shall disclose any other system files that it intends to exclude from collection and/or search to the requesting party.

### C.   Email Domain Exclusions

Producing parties may utilize an ESI search process to identify categories of documents, such as emails from domains typically associated with junk email, such as retailer advertising, and newsletters or alerts from non-industry sources.

### D.      Spam and Virus Filtering

Absent compelling circumstances and upon notice by a requesting party to a producing party, any message, attachment or other electronically stored information that has been identified by a spam or virus filter shall be treated as per se non-responsive and a party shall not be required to preserve, review, or produce such ESI.

### E.      Technology Assisted Review / Predictive Coding

The parties also recognize the availability of a variety of search tools and methodologies, including but not limited to Technology Assisted Review (TAR). If the producing party intends to use TAR or similar advanced analytics as a substitute for attorney responsiveness review, the parties agree to meet and confer in good faith to attempt to reach agreement about the technology and process that a producing party proposes to use to identify responsive ESI and a statistically sound methodology to determine the recall rate and other measures of the effectiveness of the tool and processes in identifying responsive documents. The producing party shall make disclosures regarding its tools and processes necessary to make the meet and confers meaningful and for the requesting party to negotiate on an informed basis.

If, prior to commencement of negotiations over search terms, a producing party intends, or is likely, to use both search terms and TAR (or similar advanced analytics), it shall notify the requesting party prior to commencement of search term negotiations. If a producing party decides to employ TAR or similar advanced analytics during, or after the conclusion of, negotiations over search terms, it shall promptly notify the requesting party before commencing any review. Under either of these circumstances, the parties shall meet and confer regarding whether use of search terms prior to application of TAR is appropriate, and if so, how, to what extent, and under what conditions search terms may be applied.

### F.      Email Threading

The parties may utilize email threading technology in their review to thread email messages where the content of those messages, and any attachments, are wholly contained within a later email message in the thread (Inclusive Emails). While the parties agree to the search and review of only Inclusive Emails, the parties will produce entire email threads.

## VII.   FORMAT OF PRODUCTION

The parties agree to the format for production as described herein as well as in Exhibit C.

### A.      Paper Documents

Hard copy documents shall be scanned to single-page TIFF Group IV format (300 DPI resolution) with corresponding searchable OCR text and be logically unitized. The file name for the TIFF image shall be the Bates/PageID Number. Scanned documents shall also be converted into searchable text using optical character recognition (OCR), extracted and saved as a text file named with the Bates/PageID Number. The OCR shall include the Bates/PageID number for each page. The load file shall include a field for the OCR/Text file path.

### B.      Email and User-Created Files

The parties will produce documents in accordance with the specifications identified in this section. ESI will generally be produced in single-page TIFF format (300 DPI resolution) with corresponding document-level extracted text and a delimited DAT file containing the metadata fields outlined in Exhibit C.

> 1.   All spreadsheet and presentation files (e.g., Excel, PowerPoint) shall be produced in native format with an associated placeholder image, and a native file path contained in the DAT file to the native file.
>
> 2.   All hidden text (e.g., track changes, hidden columns, mark-ups, notes) shall be expanded and rendered in the image file.
>
> 3.   All non-graphic embedded objects (Word documents, Excel spreadsheets, .wav files, etc.) that are found within a file shall be extracted and

produced. For purposes of production, the embedded files shall be treated as attachments to the original file, with the parent/child relationship preserved.

4.      The parties agree to take reasonable steps based on industry standards to open password-protected or encrypted files, including using commercially accessible software as well as requesting passwords from those individuals which the Parties represent. If there are potentially responsive encrypted or password protected documents, which the producing party has been unable to, after reasonable efforts, to locate the password or decrypt, the parties shall meet and confer. If a party believes that removing password protection is unduly burdensome, the parties shall meet and confer.

5.      The producing party shall disclose any substantive gaps, errors, or exceptions in the collected or processed ESI.

## C.      Family Relationships and Hyperlinked Documents

Parent-child relationships (association between an attachment and its parent document) shall be preserved. The attachment(s) shall be produced adjacent to the parent document, in terms of Bates numbers, with the first attachment being named with the next sequential number after the parent, and any additional attachment(s) sequentially numbered after that first attachment. The Parties agree that if any part of a Document or its attachments is responsive, the entire Document and attachments will be produced as responsive, except any attachments that must be withheld or redacted and logged based on privilege. Withheld documents should be replaced with slip sheets.

The producing party shall use best efforts to produce "Modern attachments"[2] contained within emails or other Unstructured Data in a reasonably usable form that will identify the connection between the "parent" message (the originating message containing the modern attachment) and the modern attachment. The producing party shall meet and confer with the

---

[2] For the purposes of this Protocol, Modern attachments include embedded files, hyperlinks or other methods that point a user to files stored in the cloud or a shared repository such as SharePoint and other types of collaborative data sources, instead of being directly attached to a message, as has been historically common with email communications.

requesting party to discuss proposed formats of production for modern attachments. To the extent that a unique modern attachment points to a drive, folder, or other ESI that is not an individual file, the parties shall meet and confer to discuss production.

### D.    Social Media and Short Messages

Prior to any production of responsive data from social media (e.g., Twitter, Facebook, LinkedIn etc.), or short messaging platforms (e.g., WhatsApp, Slack, Teams, etc.), the producing party shall discuss the potential export formats and make good faith efforts to reach agreement about what additional messages will be produced in proximity to the responsive message(s).

Short Messages shall be produced in a searchable format that preserves the presentational features of the original messages, such as emojis, images, video files, animations, and the like. Short Messages must not be converted to non-unitized file formats such as PDF or TIFF. In general, Short Messages should be produced in the same format as that in which they were exported for purposes of collection, search, or review. Per Section VII(C) of this Protocol, hyperlinks contained within Short Messages should be produced in a useable format.

### E.    Custodial Mobile Device Data

Prior to any production of responsive data from mobile devices, the producing party shall discuss the potential export formats and the method and tool used for extraction.

### F.    Redacted Documents

Documents that contain redactions, including any associated family members, will be produced in single-page TIFF format (300 DPI resolution) with corresponding document-level extracted text and a delimited DAT file containing the metadata fields outlined in <u>Exhibit C</u> to

the extent that such metadata fields are not part of the redaction.[3] Documents produced with redactions shall identify in some manner (such as through highlighting in black or through the use of redaction boxes) the location and extent of redacted information. To the extent a party deems production of redacted TIFF images of Excel spreadsheets significantly degrades the usability of the document, the parties agree to meet and confer regarding alternate production methodologies of the redacted information.

### G.   Structured Database Systems

The default form for production of database information is "fielded tables" where each row represents a database record and each column represents a single data field, such as a Microsoft Excel spreadsheet or delimited text file. Through conferral, the producing party will provide a description of the fields contained in their structured databases, including any codes used.  Upon review of the report, the requesting party may make reasonable requests for additional information to explain the database schema, codes, abbreviations, and different report formats or to request specific data from identified fields.

## VIII.   ADDITIONAL CONSIDERATIONS

### A.   Inadvertent Disclosure of Privileged Information

Nothing herein shall be deemed to waive or limit any applicable privilege or to affect the ability of a party to seek relief for the disclosure of information protected by privilege regardless of the steps taken to prevent disclosure. If a party produces information that it later discovers, or in good faith later asserts, to be privileged or otherwise protected from disclosure, the production

---

[3] To the extent a party asserts privilege over any document belonging to a family that is in any part otherwise subject to production, the family relationship must be preserved in the production and such privilege claim asserted through redaction and not withholding. This remains true even if the privilege claim applies to the entirety of one or more logically unitized documents or members within a family. In such instances, the documents will be produced with the family, with redaction applicable to the full document consistent with this paragraph.

of that information will not be presumed to constitute a waiver of any applicable privileges and the party receiving the inadvertently produced information may not argue that the producing party failed to take reasonable steps to prevent production of the privileged materials in support of an argument that any privilege has been waived.

In such circumstances where a party discovers that it has inadvertently produced privileged documents, the producing party shall notify the requesting party within a reasonable period of time. This notification shall identify the inadvertently produced documents by BEGDOC# and ENDDOC# numbers, as those documents were produced in discovery. Upon receipt of this notification, the requesting party shall not review the inadvertently produced materials and shall make reasonable efforts to segregate them.

The producing party, within five (5) days of notifying the requesting party of the inadvertent production, shall provide the requesting party with a detailed privilege log for the inadvertent production. The privilege log will include, for each document identified by the producing party, the privilege asserted, the basis for the privilege, the names of the parties involved (e.g., author, recipient(s)), and their roles. If the requesting party wishes to dispute the claim of privilege, it may file a motion with the Court under seal within ten (10) days of receiving the privilege log. The requesting party will be provided with an additional ten (10) days to file a motion if the producing party identifies more than 100 documents in its privilege log. Otherwise, within the same 10-day period, for any documents for which the requesting party is not disputing the claim of privilege, the requesting party shall (a) return the materials (including all copies thereof ) to the producing party; or (b) destroy the materials (including all copies thereof) and confirm in writing to the producing party the destruction of such materials, including all later created excerpts, summaries, compilations, and other documents or records

that include, communicate, or reveal the information claimed to be privileged. Notwithstanding the language in this section, the EEOC must and will comply with all laws, rules, regulations, and policies governing the retention and management of records and documents exchanged or received during this litigation.

The information in dispute shall remain sequestered until the Court rules on the motion or the parties agree otherwise. The sequestered information will then be returned, destroyed, or released from sequestration in accordance with the Court's direction. The parties agree that nothing in this Order allows the requesting party to access, review, or share the information until any challenge to privilege is resolved by the Court.

### B.      Redactions

The producing party may use redactions to protect attorney client, work product, other legally recognized privileges, or Sensitive Personally Identifiable Information (SPII),[4] consistent with any operative order concerning privilege that is agreed upon by the parties and/or entered in this litigation. Absent further order of the Court or agreement of the parties, no redactions for relevance may be made within a produced document. To the extent that a producing party maintains that an otherwise responsive document contains certain highly sensitive information that should be redacted for reasons other than those permitted by this Paragraph, the parties shall meet and confer concerning the proposed treatment of such information. If the parties do not agree, the producing party may submit the document to the Court under seal for review in camera and seek an order concerning the appropriate treatment of the disputed information.

---

[4] For purposes of this matter, SPII includes personal medical or health records not relevant to this litigation or protected by HIPAA, personal credit card or personal bank account numbers, social security numbers, tax identification numbers, or other sensitive personal information of Aggrieved Individuals, individual employees or agents of the parties, or individuals not a party to this litigation.

### C.      Privilege Logs

The producing party shall supply a log of all the documents withheld or redacted under a claim of privilege and/or work product with sufficient information to allow the requesting party to understand the basis for the privilege claim. The log shall be produced in an electronic and easily searchable and manipulatable format (such a CSV file). Absent a showing a good cause, the parties agree that Communications involving trial counsel that post-date the EEOC's Letter of Determination need not be logged.

### D.      Metadata

The parties shall take reasonable steps to preserve relevant metadata fields listed in Exhibit C for Email and User-Created Files to the extent it is relevant, available, and has been maintained in the ordinary course of business.

### E.      Continued Operation of Systems

Nothing in this order shall prohibit the following actions taken in the ordinary course of business: (1) routine maintenance, operation, or replacement of computer systems or equipment; and (2) upgrading, loading, reprogramming, customizing, or migrating software, even if such actions modify or alter the way in which ESI is maintained, stored, or viewed, provided the integrity of relevant ESI is reasonably maintained.

### F.      Review for Responsiveness and Privilege

Nothing contained herein is intended to or shall serve to limit a party's right to conduct a review of documents, ESI or information (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production.

### G.      Relief from Court

If the parties are unable to agree, need further clarification on any issue relating to the preservation, collection, or production of ESI, or require modification of this Protocol, any party may seek appropriate relief from the Court.

**IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.**

DATED:

By: *s/ Carey DeGenaro*
Carey DeGenaro
Lauren Duke
Equal Employment Opportunity
Commission
950 17th Street, Suite 300
Denver, CO 80202
lauren.duke@eeoc.gov
carey.degenaro@eeoc.gov
*Attorneys for Plaintiff*

DATED:

By: *s/ John F. Peters* (by consent)
John F. Peters
Kendra Smith
Katherine N. Hoffman
Hall & Evans, LLC
1001 17th Street, Suite 300
Denver, CO 80202
petersj@hallevans.com
smithk@hallevans.com
hoffmank@hallevans.com
*Attorneys for Defendant Midwest Farms, LLC*

**SO ORDERED.**

Signed and entered this 2nd day of February , 2024.

_____
Maritza Dominguez Braswell
United States Magistrate Judge

**EXHIBIT A**

**RELEVANT ESI SOURCES**

**I.      RELEVANT ESI SOURCES FOR DEFENDANT MIDWEST FARMS, LLC:**

**A.      Unstructured Data**

    **1.      Email:** Defendant's employees use Outlook, with cloud storage through Exchange, for email communications. A copy of all emails sent or received by Defendant's employees that were not previously deleted during the normal course of business, have been retained in employees normal email accounts. Midwest Farms has not migrated its email during the relevant time period**.** Midwest Farms does not preserve email accounts for prior employees but selectively transfers certain emails into the accounts of current employees.

    **2.      Other User-Created Files:** User created files are routinely kept on users' computers. Midwest Farms does not have local network drives. I

    **3.      Short Messages:** Defendant's employees do not use any messaging applications other than email and texting.

**B.      Cellular Phones**

    Some of Defendants' employees use cellular phones issued by Midwest Farms. Midwest Farms estimates that roughly thirty employees have employer-issued phones. If the EEOC requests any data from these phones, Midwest Farms will confer regarding which phones are relevant and whether to forensically preserve employer-issued phones and, after collection and review, produce any responsive information.

C.      **Database Systems**

    1.      **Database Name**: Midwest Farms payroll information is entered into software from third-party Asure Software, Inc. to process employee status, payroll, benefits, taxes, and other payroll needs.

    2.      **Database Name**: Midwest Farms has a computer that runs Midwest Farms' feed mill. Counsel for Midwest Farms understands this computer has no data other than data regarding the feed mill. If the EEOC wishes to review data from this computer, the parties can confer regarding relevance.

    3.      **Database Name:** Some of Midwest Farms' financial records are processed through farm management software from Red Wing Software.

## II.     RELEVANT SYSTEMS FOR PLAINTIFF:

### A.     Unstructured Data

1.     **Email:** EEOC migrated migrating its GroupWise email system to Office 365 in or around November 2017 and has used Office 365 at all times since. Emails are archived and can be exported.

2.     **User-Created Files**: User created files are routinely kept in network server locations. EEOC employees are issued laptops that double as desktop computer hard-drives.

### B.     Structured Database Systems

1.     ARC is used by EEOC staff to maintain information relating to the charge and charge processing, including, but not limited to, the charging party's name, address, and demographics and respondent company address and profile information.

## III.    POTENTIALLY RELEVANT SYSTEMS FOR AGGRIEVED INDIVIDUALS:

| Custodian | Source Type | Source |
|---|---|---|
| Andria Denny | Mobile Phone | Mobile Phone |
| Andria Denny | Social Media | Facebook |
| Andria Denny | Email | Gmail |
| Shannon Koepke | Social Media | Facebook |
| Shannon Koepke | Email | Yahoo |
| Shannon Koepke | Mobile Phone | Mobile Phone |
| Shannon Koepke | Social Media | TikTok |
| Amanda Rogers | Social Media | Facebook |
| Amanda Rogers | Email | Yahoo |
| Amanda Rogers | Mobile Phone | Mobile Phone |

**EXHIBIT B**

**CUSTODIANS[5]**

**I.     PLAINTIFF**

| |
|---|
| Carlos Palafox, EEOC Investigator |
| Andria Denny, Charging Party |
| Shannon Koepke, Aggrieved Individual |
| Amanda Rogers, Aggrieved Individual |

**II.     DEFENDANT**

| **Email custodians** |
|---|
| Kelly Soncksen, Office Assistant |
| Doran Soncksen, Production Manager |
| Donna Hilt, Office Manager |
| David Amundson, Manager of Operations |
| Michael Golub, transportation manager |
| Andrew Bezingue, feed mill manager |
| Nathan Foos, environmental manager |
| Jose Viveros-Herrera, trainer |
| Diane Wilhelm, Midwest Capital, LLC, human resources |
| Ron Houser |

---

[5] The parties agree this list of custodians may be supplemented as additional individuals are identified.

## EXHIBIT C

## PRODUCTION SPECIFICATIONS

**Form of Production / Load File Specifications**

**A.      FORM OF PRODUCTION**

The parties agree to make all reasonable efforts to produce documents in accordance with the specifications identified in this document.  As set forth with greater particularity below, some ESI will be produced in native format, while PDF-format and hardcopy documents will be produced in single-page TIFF format (300 DPI resolution) with a delimited DAT file containing the metadata fields outlined in Attachment 1, accompanied by an Opticon (OPT) cross-reference file and corresponding document-level extracted text. Before making a production that does not conform to these specifications, the producing party shall meet and confer with the receiving party to explain why the production will not conform and explore alternative formats. The Commission uses the Relativity suite of e-Discovery software. Counsel for Midwest Farms uses iConnect e-Discovery software.

### 1.      Email and User-Created Files

The parties agree to make all reasonable efforts to produce documents in accordance with the specifications identified in this section.

Email will be produced in single-page TIFF format (300 DPI resolution) with a delimited DAT file containing the metadata fields outlined in Attachment 1, accompanied by an Opticon (OPT) cross-reference file and corresponding document-level extracted text.

All spreadsheet and presentation files (e.g. Excel, PowerPoint) shall be produced in native format with an associated placeholder image.  All hidden text (e.g. track changes, hidden columns, mark-ups, notes) shall be expanded and rendered in the image file. All non-graphic embedded objects (Word documents, Excel spreadsheets, .wav files, etc.) that are found within a

file shall be extracted and produced. For purposes of production, the embedded files shall be treated as attachments to the original file, with the parent/child relationship preserved. Any data (whether individual files or digital containers) that is protected by a password, encryption key, digital rights management, or other encryption scheme, shall be decrypted prior to processing for production, to the extent possible.

## 2.   Social Media

Prior to any production of responsive data from social media (e.g. Twitter, Facebook, LinkedIn, internet-based email accounts, etc.), the producing party shall discuss the potential export formats.

## 3.   Redacted Documents

Documents that contain redactions, including any associated family members, will be produced in single-page TIFF format (300 DPI resolution) with corresponding document-level extracted text and a delimited DAT file containing the metadata fields outlined in Attachment 1 to the extent that such metadata fields are not part of the redaction. To the extent a party deems production of redacted TIFF images of Excel spreadsheets significantly degrades the usability of the document, the parties agree to meet and confer regarding alternate production methodologies of the redacted information.

## 4.   Structured Data: Database Systems

Information from structured database systems shall be produced through existing report formats available in the associated applications, including but not limited to Microsoft Excel spreadsheet or delimited text format, if available.  If a receiving party believes that the format of a produced report is inadequate or does not fully respond to a discovery request, the parties agree to meet and confer regarding other methods to produce responsive information from the Database Systems.

### 5. Paper Documents

Documents kept in paper format in the usual course of business shall be produced in scanned and logically unitized format. Scanning shall be to single-page, TIFF Group IV, 300 dots per inch (dpi). Each page shall include the Bates/PageID number at the bottom of the page. The file name for the TIFF image shall be the Bates/PageID Number. Scanned documents shall also be converted into searchable text using optical character recognition (OCR), extracted and saved as a text file named with the Bates/PageID Number. The OCR shall include the Bates/PageID number for each page. The load file (see A.8 below) shall include a field for the OCR/Text file path.

### 6. PDF Files

Documents kept in PDF format in the usual course of business shall be produced in logically unitized format. Such documents shall not be combined, merged, or otherwise joined if they are not so organized in the usual course of business. Files usually maintained in a different file type, but converted to PDF format and produced, will not be accepted.

### 7. "Logically Unitized" Defined

"Logically unitized" means that all pages that belong together as a document, and only those pages, are produced as one document, with relationships such as parent and child attachments maintained. Documents that are bulk-scanned to non-unitized files will not be accepted.

### 8. Load File

Each production shall be accompanied by a delimited-load file in .DAT format that establishes the proper document breaks and maintains the parent/child relationships (BegAttach and EndAttach). The load file shall use the delimiters identified below and include all applicable data for the fields identified in Attachment 1.

| Value | Character | ASCII Number |
|---|---|---|
| Column | ¶ | 020 |
| Quote | þ | 254 |
| Newline | ® | 174 |
| Multi-Value | ; | 059 |
| Nested Value | \ | 092 |

The load file should be accompanied by an Opticon (OPT) cross-reference file that references one Bates number per line.

**B.   TRANSMISSION AND DELIVERY**

**1.   Volumes and Folders**

Provide separate folders for images, text, and load files. Provide a Volume Number identifier for each production that is unique and runs in succession from the last volume produced (e.g. VOL001, VOL002, VOL003).

**2.   Acceptable Means of Delivery**

Where possible, productions should be delivered by electronic means.  Productions may be delivered by file-sharing services such as Drop Box or Hightail by sending the download to [Trial Attorney]HYPERLINK "mailto:" and [Paralegal]HYPERLINK "mailto:".  Productions of less than 40MB total may be emailed to [Trial Attorney]HYPERLINK "mailto:" and [Paralegal] HYPERLINK "mailto:". Productions greater than 40 MB, or split into multiple emails whose collective size is greater than 40 MB, will not be accepted by email.

a)   For production to counsel for Midwest Farms, please send the production to:

a.   Trial counsel: Kendra Smith, Katherine Hoffman, and Jack Peters;

    b.   Paralegals: Sarah Reffett, <u>reffetts@hallevans.com</u>, and Alicia Thompson,

        <u>thompsonam@hallevans.com</u>;

    c.   Legal Assistants: Rebecca Walker, <u>walkerr@hallevans.com</u>; Erica

        Cameron, <u>camerone@hallevans.com</u>.

Where production to the EEOC by electronic means is not feasible, productions may be saved to external media (CD/DVD, USB drive, external HDD drive) and delivered by UPS or FedEx to the following address:

> US EEOC
> OGC\LMS\LitSupport
> Attn: Amanda Beckerink or Richard Van Nelson
> 131 M Street, NE
> 5th Floor
> Washington, D.C. 20507

Delivery by U.S. Postal Service is not sufficient, because USPS deliveries are subjected to X-RAY security scanning, which damages data stored on external media.

**3.**    **Encryption**

Productions may be encrypted using WinZip or PKWare. The parties will not accept productions that require the installation of other applications to read the data or remove encryption.

**Attachment 1**

**METADATA FIELDS**

| Field name | Field Description | Field Type | Field Value | Hard Copy | E-mail | Other ESI |
|---|---|---|---|---|---|---|
| CUSTODIAN | Custodian(s)/Source(s) - format: Last, First or ABC Dept. | Text | 160 | x | x | x |
| AUTHOR | Creator of the document | Text | 500 | | | x |
| BEGDOC# | Start Bates (including prefix) - No spaces | Text | 60 | x | x | x |
| ENDDOC# | End Bates (including prefix) - No spaces | Text | 60 | x | x | x |
| PGCOUNT | Page Count | Number | 10 | x | x | x |
| GROUPID | Contains the Group Identifier for the family, in order to group e-mails with their attachments | Text | 60 | | x | x |
| BEGATTACH | Start Bates number of parent document in attachment range | Text | 60 | x | | x |
| ENDATTACH | End Bates number of last attachment in attachment range | Text | 60 | x | x | x |
| REDACTIONS | Identifies whether the document contains redactions. | Boolean | 10 | x | x | x |
| RECORD TYPE | Use the following choices: Image, Loose E-mail, E-Doc, Attachment, Hard Copy or Other. If using Other, please specify what type after Other | Text | 60 | x | x | x |
| FROM | Author - format: Last name, First name | Text | 160 | | x | x |
| TO | Recipient- format: Last name, First name | Text – semicolon delimited | Unlimited | | x | x |
| CC | Carbon Copy Recipients - format: Last name, First name | Text – semicolon delimited | Unlimited | | x | x |
| BCC | Blind Carbon Copy Recipients - format: Last name, First name | Text – semicolon delimited | Unlimited | | x | x |

| SUBJECT | Subject/Document Title | Text | Unlimited | | x | x |
|---------|------------------------|------|-----------|---|---|---|
| CONVINDEX | E-mail system ID used to track replies, forwards, etc. | Text | Unlimited | | x | |
| TEXT FILEPATH | Relative file path of the text file associated with either the extracted text or the OCR | Text | Unlimited | x | x | x |
| DATE TIME SENT | Date Sent (Use Time Zone of Collection Locality) | Date and Time | MM/DD/YYYY HH:MM:SS | | x | |
| DATE TIME CRTD | Date Created (Use Time Zone of Collection Locality) | Date and Time | MM/DD/YYYY HH:MM:SS | | x | x |
| DATE TIME MOD | Date Last Modified (Use Time Zone of Collection Locality) | Date and Time | MM/DD/YYYY HH:MM:SS | | x | x |
| DATE TIME ACCD | Date Accessed (Use Time Zone of Collection Locality) | Date and Time | MM/DD/YYYY HH:MM:SS | | x | x |
| FILE SIZE | Native File Size in bytes | Number | 10 | | | x |
| FILE NAME | File name - name of file as it appeared in its original location | Text | Unlimited | | | x |
| FILE EXTENSION | Extension for the file (e.g. .doc, .pdf, .wpd) | Text | 10 | | x | x |
| FILEPATH | Data's original source full folder path | Text | Unlimited | | x | x |
| NATIVE LINK | Relative file path location to the native file | Text | Unlimited | | x | x |
| FOLDER ID | Hard Copy container information (e.g. folder or binder name) | Text | Unlimited | x | | |
| MD5 HASH | MD5 Hash value (used for deduplication or other processing) (e-mail hash values must be run with the e-mail and all of its attachments) | Text | Unlimited | | x | x |